IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERARDO GARCIA,

     Plaintiff,

vs.                                                                                    No. CIV 25-0210 JB/JHR

DENISE BOYEA, EDDIE HARRELL,
DALE JANWAY, NADINE MIRELES
and JEFF PATTERSON, in their capacities
as officials for the CITY OF CARLSBAD,
NEW MEXICO,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss for Failure to State a Claim, filed March 7, 2025 (Doc. 3)("MTD").  Pro se Plaintiff Gerardo Garcia does not file a response. The Court considers the motion, the record, and the relevant law. For the reasons stated below, the Court grants the motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case stems from several encounters Garcia and his wife have with City of Carlsbad code enforcement officer Jeff Patterson and police officer Jessie Rodriguez over service of a city resolution requiring Garcia to clean up debris on his property pursuant to relevant city codes.  See Civil Action Complaint, Profession and Official Capacities, at 4-5, filed February 28, 2025 ("Complaint"); MTD at 2. Garcia alleges that Patterson and Rodriguez trespass and commit a litany of constitutional violations against him and his family when serving notice of the resolution, pointing to the "no trespassing" signs posted around his property.  See Complaint at 5.  He says his complaints to various law enforcement agencies go unanswered. See Complaint at 5.  Garcia thus files this lawsuit on February 4, 2025, asserting "scattershot civil rights claims against the

City Defendants under the First, Fourth, Fifth, and Fourteenth Amendments, and torts for trespassing, harassment, and stalking." MTD at 2.  See Complaint at 5-6.  Defendants remove the matter to federal court on February 28, 2025, see Notice of Removal of Action Under 28 U.S.C. § 1441(a), filed February 28, 2025 (Doc. 1), and file the MTD instead of an answer. Garcia does not file a response.

Defendants argue that dismissal is proper on several grounds.  First, they contend that none of Garcia's civil rights are violated, because law enforcement are constitutionally permitted to "knock-and-talk" at an individual's residence regardless of "no trespassing" signage.  MTD at 6 (collecting Tenth Circuit cases).  The Defendants argue that this is the case here, where Defendants approach Garcia's home to leave papers on the porch but do not linger or search the home.  See MTD at 7 ("As recognized by [United States v. Carloss, 818 F.3d 988, 994 (10th Cir. 2016)] even placing a "NO TRESPASSING" sign on the front door does not revoke the implied license to approach a home and leave papers on the porch.")(brackets added).  Defendants contend, therefore, that Garcia's facts, taken as true, show "only that papers were left on the porch" within constitutional parameters.  MTD at 7. "In sum, [Garcia's] Section 1983 and 241 claims, as well as, any New Mexico Civil Rights Act claims, should be dismissed." MTD at 7, 8.

Defendants similarly assert that Garcia's tort claims for trespass, harassment and stalking pursuant to the Federal Tort Claims Act ("FTCA") are subject to dismissal.  See MTD at 8.  This is primarily because no federal employees or other federal government action is involved in this case. See MTD at 8.  Further, Defendants argue Garcia cannot allege these claims in the criminal context because he lacks any state prosecutorial authority.  See MTD at 9.

Defendants finally address Garcia's remaining "scattershot" claims.  MTD at 8.  They explain that no facts allege they incited violence nor committed any other liable conduct under the First, Fifth, or Fourteenth Amendments of the United States Constitution.  See MTD at 8.

- 2 -

Alternatively, these claims cannot survive, because Garcia is not the real party in interest; Garcia was not at home during the alleged violations, and he cannot assert them on behalf of his wife or grandson.  See MTD at 9.

### LAW REGARDING 12(b)(6) MOTION TO DISMISS

The Court preliminarily notes that "[a] pro se litigant must 'follow the same rules of procedure that govern other litigants." Mayfield v. Presbyterian Hosp. Admin., 772 Fed. Appx. 680, 685 (10th Cir. 2019)(citation omitted).[1]  Courts also, however, construe pro se litigants' pleadings liberally, holding them "to a less stringent standard than formal pleadings drafted by lawyers."  Greer v. Moon, 83 F.4th 1283, 1292 (10th Cir. 2023)(quoting Hall v. Belmon, 935 F.3d 1106, 1110 (10th Cir. 1991)).  And although the Court does not act as an advocate for a pro se litigant, if it "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories . . . or his unfamiliarity with pleading requirements."  Greer v. Moon, 83 F.4th at 1292 (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

---

[1] Mayfield v. Presbyterian Hosp. Admin., 772 Fed. Appx. 680, 685 (10th Cir. 2019) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Mayfield v. Presbyterian Hosp. Admin. and Persik v. Manpower Inc., 85 Fed. Appx. 127 (10th Cir. 2003), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Nonetheless, the Federal Rules of Civil Procedure require a complaint to be "plausible on its face" or face dismissal under rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir.1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)( "[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir.2009)( "[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.") (quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir.2006)(internal quotation marks omitted)).

A complaint need not set forth detailed factual allegations, but a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)("To determine whether a motion to dismiss was properly granted, we apply a plausibility standard to ascertain whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007).

The Tenth Circuit has held that "Iqbal establishes the importance of context to a plausibility determination." Gee v. Pacheco, 627 F.3d 1178, 1185 (10th Cir.2010). "'[P]lausibility' in th[e general pleading] context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir.2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Robbins v. Oklahoma, 519 F.3d at 1247.

## ANALYSIS

While Garcia does not file a response to the MTD, the Tenth Circuit has directed that "[a] district court may not grant a 12(b)(6) dismissal based solely on the plaintiff's failure to respond." Persik v. Manpower Inc., 85 Fed. Appx. 127, 130 (10th Cir. 2003)(citation omitted). Instead, the

- 5 -

court "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." Persik v. Manpower Inc., 85 Fed. Appx. at 130 (citation omitted).  The Court independently reviews Garcia's allegations and finds that none of his claims survive under the Rule 12(b)(6) standard.[2]

## I.    GARCIA'S FIRST, FOURTH, FIFTH, AND FOURTEENTH AMENDMENT CLAIMS MUST BE DISMISSED.

The First Amendment provides that "Congress shall make no law ... prohibiting ... the right of the people peaceably to assemble, and petition the Government for a redress of grievances." U.S. CONST. amend. I. Included among the protections the First Amendment guarantees, the Supreme Court has recognized "a First Amendment right to associate for the purpose of speaking, which [it has] termed a 'right of expressive association.'" Rumsfeld v. Forum for Acad. & Inst. Rights, Inc., 547 U.S. 47, 68 (2006)(quoting Boy Scouts of Am. v. Dale, 530 U.S. 640, 644 (2000)). See also Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 658 (10th Cir.2006)("In addition to freedom of speech, the First Amendment also implicitly protects the corresponding freedom to expressive association.").  The First Amendment protects associational rights in two distinct ways: (i) it "protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships"; and (ii) it ensures "the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities." Bd. of Dirs. v. Rotary Club of Duarte, 481 U.S. 537, 544 (1987). See also Grace United Methodist Church v. City of Cheyenne, 451 F.3d at 658.

---

[2] The Court notes that Defendants are state actors and therefore any constitutional violations must be asserted through a Section 1983 action. See Chacon v. Albuquerque Police Dep't, 347 F. Supp. 3d 694, 700 (D.N.M. 2018). The Court does not reach this step, however, because Garcia's complaint fails to state any claim, including any civil rights violation.

"The right to associate for expressive purposes is not, however, absolute," and the Supreme Court has cautioned that "[i]nfringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." Nat'l Commodity & Barter Ass'n v. Archer, 31 F.3d 1521, 1531 (10th Cir.1994)(quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 623 (1984)).   Indeed, there is no independent First Amendment right of expressive association; the First Amendment protects the freedom of association only in certain circumstances.   See City of Dallas v. Stanglin, 490 U.S. 19, 23 (1989)("While the First Amendment does not in terms protect a 'right of association,' our cases have recognized that it embraces such a right in certain circumstances.").   Although an opportunity "might be described as 'associational' in the common parlance," it does not necessarily follow that it involves "the sort of expressive association that the First Amendment has been held to protect." City of Dallas v. Stanglin, 490 U.S. at 24.   Although "[i]t is possible to find some kernel of expression in almost every activity a person undertakes . . . such a kernel is not sufficient to bring the activity within the protection of the First Amendment." City of Dallas v. Stanglin, 490 U.S. at 25.   In City of Dallas v. Stanglin, the Supreme Court declares that a municipal ordinance creating age-restricted dance halls did not violate a "generalized [First Amendment] right of 'social association'" because such a right does not exist.   490 U.S. at 25.   The Supreme Court declines to extend First Amendment protection to dance hall encounters, because "they simply do not involve the sort of expressive association that the First Amendment has been held to protect" and "there [is] no suggestion that these patrons 'take positions on public questions.'" City of Dallas v. Stanglin, 490 U.S. at 24–25 (quoting Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. at 548).

Here, Garcia does not state a claim for a First Amendment violation.   He does not plead any particularized facts that Defendants infringe his right to protected speech or private

relationships. To the contrary, he narrates exercising his freedom of expression to engage with Patterson and Rodriguez: "I met them on my front yard which I took my camera and recorded the contact, I tried to converse with them and accused them of committing crimes and violating my civil rights." Complaint at 5. He does not allege that Patterson and Rodriguez retaliate or otherwise punish him for speaking; instead, Patterson and Rodriguez say nothing and drive away. See Complaint at 5. To the extent Garcia believes the resolution and municipal code requiring him to pick up his litter violates his rights, the First Amendment does not protect him. Garcia offers no further facts from which a First Amendment claim can survive.

The Fourth Amendment "protects '[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures.'" United States v. Thompson, 524 F.3d 1126, 1132 (10th Cir. 2008)(quoting U.S. CONST. amend. IV). It also commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "The security of one's privacy against arbitrary intrusion by the police -- which is at the core of the Fourth Amendment -- is basic to a free society." Wolf v. Colorado, 338 U.S. 25, 27 (1949), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643, (1961).

For purposes of analyzing Fourth Amendment seizures, the Tenth Circuit has divided interactions between police and citizens into three categories: (i) consensual encounters; (ii) investigative stops; and (iii) arrests. See Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir. 2000). A consensual encounter occurs when a police officer approaches a person to ask questions under circumstances where a reasonable person would feel free to refuse to answer and to end the encounter. See Oliver v. Woods, 209 F.3d at 1186. For example, officers generally may "go to a person's home to interview him," United States v. Daoust, 916 F.2d 757, 758 (1st Cir.1990),

- 8 -

because "[i]t is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business." 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(b), at 475 (3d ed.1996). Such encounters generally "are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing." Oliver v. Woods, 209 F.3d at 1186.

For Fourth Amendment purposes, houses "include a home's curtilage, and a home's 'front porch is a classic exemplar' of a curtilage." United States v. Carloss, 818 F.3d at 992 (10th Cir. 2013)(citation omitted). Significantly, the Supreme Court and Tenth Circuit "expressly recognize[] that a police officer like any member of the public, has an implied license to enter a home's curtilage to knock on the front door, seeking to speak with the home's occupants." United States v. Carloss, 818 F.3d at 992. Moreover, "No Trespassing" signs do not, by themselves, revoke the implied license that an officer or other member of the public has to enter a home's curtilage and knock on the front door. See United States v. Carloss, 818 F.3d at 995.

Here, Garcia cannot state a claim for a Fourth Amendment violation. He alleges that Defendants Patterson and Rodriguez are at his property on three occasions -- April 4, 2024, April 8, 2024, and February 3, 2025 -- to deliver papers despite the "No Trespassing" signs. See Complaint at 4, 5. Garcia does not allege Patterson and Rodriguez enter or search his home, or meander around the property. Rather, his allegations align with the strictures of Carloss which permits officers to do as they did here: utilize "an implied license to approach a home, knock on a front door, and ask to speak with the occupants," notwithstanding the "No Trespassing" signs. 818 F.3d at 995. Thus, Defendants do not violate Garcia's Fourth Amendment rights by approaching his home and leaving papers on the porch. Accordingly, Garcia does not state a viable claim for a violation of his Fourth Amendment rights.

A suspect's Fifth Amendment right to remain silent is shielded from police inquiry only when the suspect is in the custody of law enforcement.  See Miranda v. Arizona, 384 U.S. 436, 460–61 (1966); Cooper v. Dupnik, 963 F.2d 1220, 1238 (9th Cir. 1992).  The Supreme Court has held that a police officer's demand that a suspect identify himself or provide basic biographical information does not violate the suspect's Fifth Amendment or Miranda rights.  See Hoffman v. United States, 341 U.S. 479, 486 (1951); Hiibel v. Sixth Judicial Dist. Ct. of Nev., 542 U.S. 177, 188 (2004)("An identity request has an immediate relation to the Terry stop's purpose, rationale, and practical demands.").

Here, Garcia does not state a claim for a Fifth Amendment violation. Nowhere in the complaint does Garcia allege that he is taken into custody such that the Fifth Amendment applies. No other facts suggest that the Defendants violate Garcia's right to remain silent.  Accordingly, the Court concludes that Garcia does not state a plausible claim for a violation of his Fifth Amendment rights.

The Fourteenth Amendment's Due Process Clause provides that "no State shall ... deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. In general, state actors may be held liable under § 1983 only for their own affirmative acts that violate a plaintiff's due process rights and not for third parties' acts.  See Robbins v. Oklahoma, 519 F.3d at 1251 (citing DeShaney v. Winnebago Cnty., 489 U.S. 189, 197 (1989)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors." DeShaney v. Winnebago Cnty., 489 U.S. at 195.  The Due Process Clause does not guarantee a minimal level of safety and security. DeShaney v. Winnebago Cnty., 489 U.S. at 195. Where a plaintiff's rights are protected by a specific provision of the Constitution, such as the Fourth Amendment, then a Fourteenth Amendment claim for substantive due process cannot be brought.  See Graham v. Connor, 490

- 10 -

U.S. 386, 395 (1989).  Because the Fourth Amendment specifically protects against unreasonable searches and seizures, and because it provides an explicit textual source of constitutional protection against intrusive governmental conduct, the Fourth Amendment, not the more generalized notion of "substantive due process," must apply. See Graham v. Connor, 490 U.S. at 395.

Here, Garcia does not state a claim for a Fourteenth Amendment violation. As before, Garcia does not allege Defendants conduct an unlawful entry or search of his home, detain him, or take anything from his property. Aside from being upset that Defendants disregard his "No Trespassing" signs, as they are permitted to do, Garcia has not alleged a deprivation of life, liberty or property. Accordingly, Garcia does not allege any facts which support the finding of a Fourteenth Amendment violation.

Additionally, a Section 1983 claim must be personal. In other words, it "must be based upon the violation of a plaintiff's personal rights, and not the rights of someone else." Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990). Therefore, to the extent Garcia tries to bring constitutional claims on behalf of his wife or anyone else, such third-party claims fail to state a claim.

Next, Garcia alleges several times that Defendants commit crimes to include harassment, trespass, coercion, and stalking.  See Complaint at 5.  Criminal cases cannot be brought pro se, however.  See City of Roswell v. Smith, 2006-NMCA-040, ¶¶ 10-12, 133 P.3d 271, 273–74.  The Court's consequent lack of jurisdiction is fatal to Garcia's criminal claims.  See City of Roswell v. Smith, 2006-NMCA-040, ¶¶ 10-12, 133 P.3d 271, 273–74.  Even assuming the Court could consider their merit, Garica does not allege facts to meet the elements of stalking and harassment under the state criminal code.  See N.M. STAT. ANN. §§ 30-3A-2 to -4 (1978).  These claims still must be dismissed even assuming Garcia intends to plead these claims as torts under the Federal Tort Claims Act ("FTCA").  The Court agrees with Defendants that the FTCA "has no place in

this case" because Defendants "are not federal employees acting within the scope of their employment" as required to sustain an FTCA claim. See Tolbert v. Gallup Indian Med. Ctr., 555 F. Supp. 3d 1133, 1148–1150 (D.N.M. 2021).

Finally, Garcia's citations to 18 U.S.C. §§ 241 and 242 fail as a matter of law because these criminal statutes do not provide a basis for civil liability, nor does Garcia plead any supporting facts. See Romine v. Big O Tires Corp. Headquarters, 685 Fed. Appx. 516, 517 (9th Cir. 2017). Similarly, Garcia's citation to 42 U.S.C. § 1986, though not a criminal statute, is inapposite and implausible on its face. See 42 U.S.C. § 1986 (Action for neglect to prevent).

**IT IS ORDERED** that: (i) the Defendants' Motion to Dismiss for Failure to State a Claim, filed March 7, 2025 (Doc. 3), is granted; and (ii) the case is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Gerardo Garcia
Carlsbad, New Mexico

    *Plaintiff pro se*

Jonas M. Nahoum
Nancy R. Long
Long, Komer & Associates, P.A.
Santa Fe, New Mexico

    *Attorneys for Defendants*